In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3363

DELAURENCE ROBINSON,

*Plaintiff-Appellant*,

*v.*

DALE SCROGUM, *et al.*,

*Defendant-Appellees*.

Appeal from the United States District Court for the
Central District of Illinois.
No. 13-1282 — **James E. Shadid**, *Judge*.

SUBMITTED OCTOBER 18, 2017[*] — DECIDED DECEMBER 4, 2017

Before FLAUM, RIPPLE, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. DeLaurence Robinson, an inmate in Illinois, alleged in this action under 42 U.S.C. § 1983 that

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

five guards at Pontiac Correctional Center beat him in 2011 as punishment for filing grievances. The district court initially permitted Robinson to proceed on claims of retaliation and excessive force, but later dismissed the case, reasoning that *Edwards v. Balisok*, 520 U.S. 641 (1997), bars the suit because some of Robinson's allegations about the altercation conflicted with his disciplinary conviction for assaulting the guards. Because we conclude that the district court abused its discretion in declining to recruit counsel for Robinson, we vacate the judgment and remand for further proceedings.

According to Robinson's complaint, the guards were escorting him up a flight of stairs when one of them yanked on his handcuffs, causing him to lose his balance and hit his head on a cage. Rather than assist Robinson, the guards shoved him to the ground and proceeded to assault him: one guard put her foot on the side of his face and others kneed him in his neck and back. The guards then propped him up and dragged him to his cell, stopping periodically to hit him or drop him on the hard floor. Throughout this encounter, the guards taunted Robinson (who is black) with racial epithets.

Robinson denies that he resisted the guards, but a disciplinary committee found him guilty of attempted assault. Specifically, the committee found that he "jerked away" from a guard, tried to "throw his shoulder into" the guard, refused to walk, and tried to bite and spit at other guards. The committee ordered six months of good-time credit revoked and sentenced him to a year of disciplinary segregation.

This suit followed. Robinson's complaint alleged claims of retaliation, excessive force, and denial of equal protection.

The district court dismissed Robinson's equal-protection claim at screening (a decision he does not challenge on appeal). Nearly three years later, when the case finally reached the summary-judgment stage, the district court concluded that *Edwards* barred Robinson's remaining claims. In *Edwards*, the Supreme Court extended to the prison-disciplinary context its holding in *Heck v. Humphrey*, 512 U.S. 477 (1994), that a plaintiff may not pursue a claim for relief that would necessarily imply the invalidity of a still-intact criminal conviction. The district court recognized that *Edwards* would not bar Robinson's suit if he argued that the guards used more force than was reasonably necessary to subdue him, but the court concluded that Robinson "plead[ed] himself out of court" by insisting that he did nothing to provoke the beating he received from the guards.

Robinson now challenges the merits of the summary judgment order, but we do not reach that issue because we agree with him that the court erred by denying his requests for counsel. Though there is no automatic right to recruitment of counsel in civil cases, a pro se litigant's requests for counsel are entitled to careful consideration. *See Diggs v. Ghosh*, 850 F.3d 905, 911–12 (7th Cir. 2017); *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 657 (7th Cir. 2014). And when an indigent plaintiff reasonably tries to obtain counsel and requests that counsel be recruited, the district court should ask "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc). We review the denial of counsel for an abuse of discretion, reversing only if there is a reasonable likelihood that the recruitment of counsel

would have made a difference in the litigation's outcome. *Id* at 659.

The district court found that Robinson made reasonable efforts to obtain counsel, so we focus on the court's conclusion that he is capable of litigating the case pro se. In support of his requests for counsel, Robinson explained that he has only an eighth grade education and stays "heavily medicated" with psychotropic drugs. He added that he had relied on assistance from a "jailhouse lawyer" to litigate the case. The district court acknowledged Robinson's allegations about his limited education and medication but concluded that Robinson was "capable of representing himself" because he had "demonstrated an ability" to convey the facts of his case to the court.

Critically, the district court did not address or conclude that it disbelieved Robinson's explanation that another inmate helped him draft the very documents that the court looked to for evidence of his capacity to litigate. "[T]hat an inmate receives assistance from a fellow prisoner," we have cautioned, "should not factor into the decision whether to recruit counsel." *Henderson v. Ghosh*, 755 F.3d 559, 565 (7th Cir. 2014); *see Dewitt*, 760 F.3d at 658. We thus conclude that the district court abused its discretion by relying only upon Robinson's filings as a basis to reject his requests for counsel. *Cf. Davis v. Moroney*, 857 F.3d 748, 749, 752 (7th Cir. 2017) (emphasizing plaintiff's intellectual disabilities, including his alleged sixth-grade reading level, in explaining why court should have recruited counsel).

We next consider whether Robinson suffered prejudice from the lack of counsel. *See Pruitt*, 503 F.3d at 659. A litigant's poor performance before trial supports a finding

of prejudice when "there is a reasonable likelihood that the presence of counsel would have altered the outcome" of the case. *See Santiago v. Walls*, 599 F.3d 749, 765 (7th Cir. 2010); *Pruitt*, 503 F.3d at 659. Here a lawyer could have helped Robinson avoid being tripped up by *Edwards.* The district court understood Robinson to allege that he was the "victim of an unprovoked attack" and that any amount of force used against him was unjustified because he complied with the defendants' orders. But the court acknowledged that Robinson could avoid the favorable-termination requirement and "potentially prevail on the retaliation claim if he argues that the force used against him exceeded any force that would have been necessary to subdue him." Robinson's complaint does indeed suggest that the defendants used excessive force against him after he was fully subdued, so we think it reasonably probable that a recruited lawyer could have helped Robinson amend his complaint to avoid running afoul of *Edwards. See Navejar v. Iyiola*, 718 F.3d 692, 697–98 (7th Cir. 2013).

Accordingly, we VACATE the district court's judgment and REMAND for further proceedings consistent with this opinion.